**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Homeland Insurance Company of New York,<br><br>            Plaintiff,<br><br>vs.<br><br>Southwest Real Estate Purchasing Group Inc.; CRC Insurance Services Inc.; M&O Agencies Inc,<br><br>            Defendants. | No. CV 12-00856-PHX-FJM<br><br>**ORDER** |

The court has before it defendant CRC Insurance Services, Inc. ("CRC") motion to dismiss or alternatively to stay the action (doc. 15), defendants M&O Agencies, Inc. ("M&O") and Southwest Real Estate Purchasing Group, Inc.'s joinder in the motion (docs. 16, 17), plaintiff Homeland Insurance Company of New York's ("Homeland") response (doc. 20), and defendants' reply (doc. 24).

**I**

Homeland issued a group property insurance policy to Southwest Real Estate Purchasing Group ("Southwest"), which provides excess insurance coverage to members of Southwest, including the Seville Garden Apartments ("Seville"). Defendants CRC and M&O are the insurance brokers responsible for procuring the Homeland policy for Southwest. Under the terms of the policy, Homeland's excess coverage obligation is triggered when

1 damage to an insured property exceeds $5,000,000.

2 Seville was among many properties damaged as a result of a hailstorm on October 5,
3 2010. After Seville filed a claim for insurance coverage, issues arose as to Homeland's
4 obligation to fund a gap between Seville's primary and excess insurance coverage.

5 Homeland filed this declaratory judgment action against Southwest, CRC and M&O
6 (the "insurance defendants") seeking a declaration that Homeland has no obligation to pay
7 any claims arising out of the October 5, 2010 hailstorm for Seville or the other 16 Southwest
8 members, unless the total amount of claims for damage to an insured property exceeds
9 $5,000,000. Homeland also seeks equitable indemnity against CRC and M&O, as the parties
10 responsible for negligently planning and placing the insurance program. Finally, Homeland
11 asserts a claim for negligent misrepresentation arising from CRC's negotiations in procuring
12 the Homeland policy.

13 Currently pending in state court is an action by Seville against the parties in this
14 action, as well as against numerous other insurance agencies and brokers, seeking coverage
15 for hail damage to its property. Defendants now move to dismiss the complaint before us or
16 alternatively to stay this action pending the outcome of the state court proceeding.

**II**

18 We have discretion to stay or dismiss a federal action in favor of a related state
19 proceeding when (1) an action seeks only declaratory relief, Wilton v. Seven Falls Co., 515
20 U.S. 277, 286, 115 S. Ct. 2137, 2142 (1995) (discussing Brillhart v. Excess Ins. Co., 316
21 U.S. 491, 62 S. Ct. 1173 (1942)), or (2) when exceptional circumstances exist, Moses H.
22 Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 14, 103 S. Ct. 927, 936 (1983)
23 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96
24 S. Ct. 1236, 1244 (1976)). The discretionary standard announced in Brillhart controls a
25 district court's decision to stay a purely declaratory judgment action pending the outcome
26 of a parallel state court proceeding. In contrast, the "exceptional circumstances" test
27 developed in Colorado River applies when "[c]laims . . . exist independent of the request for
28 a declaration." Scotts Co. v. Seeds, Inc., 688 F.3d 1154, 1158 (9th Cir. 2012) (citation

- 2 -

omitted). Claims are "independent" if they "could be litigated in federal court even if no declaratory claim had been filed." St. Paul Fire & Marine Ins. Co. v. Nonprofits United, 91 Fed. Appx. 537, 538 (9th Cir. 2004) (citation omitted).

Homeland asserts not only a claim for declaratory relief, but also claims for equitable indemnity and negligent misrepresentation. It argues that in the event it is found liable for the gap in insurance coverage, it is entitled to equitable indemnity and damages from CRC and M&O. These claims are "independent" in that they would be viable even without the declaratory claim. Therefore, we apply the Colorado River exceptional circumstances test in deciding whether to abstain.

"[T]he [general] rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Colorado River, 424 U.S. at 817, 96 S. Ct. at 1246 (citation omitted). The Colorado River doctrine is a narrow exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them." Id. When considering whether to stay a proceeding under Colorado River, we consider (1) the inconvenience of the federal forum, (2) the desire to avoid piecemeal litigation, (3) the order in which the forums obtained jurisdiction, (4) whether federal or state law provides the rule of decision, (5) whether the state court proceedings are adequate to protect the federal litigant's rights, (6) the desire to avoid forum shopping, and (7) whether the state court proceedings will resolve all issues before the federal court. R.R. Street & Co. v. Transport Ins. Co., 656 F.3d 966, 978 (9th Cir. 2011). These factors counsel against abstention in this case.

Defendants argue that abstention is appropriate because the claims presented in this action involve the same insurance transactions, policy, and occurrence at issue in the state court proceeding. They contend that only state law insurance issues are presented and this duplicate litigation may result in inconsistent interpretations of the Homeland policy. We disagree.

The state court action is limited to Seville's claim only. In contrast, this declaratory judgment action seeks to resolve the coverage obligations among Homeland, Southwest,

- 3 -

1  CRC and M&O arising from a gap in coverage involving 17 separate properties.  Therefore
2  the state court proceedings will not resolve all the issues presented here.  Although the state
3  court action was filed first, the declaratory claims presented in the instant case first addressed
4  the "gap" coverage issues.  Southwest's declaratory judgment cross-claim was filed in state
5  court after this action was commenced.  This declaratory judgment action will resolve all
6  aspects of the coverage obligations under the Homeland policy.  While it is true that state law
7  issues are presented by Homeland's complaint, this case involves not only Arizona law, but
8  also potentially Massachusetts and Alabama state law.  Both the state and federal forums are
9  in Phoenix and thus both are equally convenient.  There is no evidence of forum shopping
10 by Homeland.  We conclude that exceptional circumstances do not exist to warrant
11 abstention.  Defendants' motion to dismiss or alternatively stay the action is denied.

### III

13 Defendants next move to dismiss Homeland's claim in Count 2 for equitable
14 indemnity.  They contend that the equitable indemnity claim is precluded by the express
15 indemnity provision in the Broker Agreement between CRC and Homeland, which provides
16 indemnification based on the "failure to comply with any statutes, regulations or regulatory
17 or administrative agency requirements or orders."  Motion, ex. E ¶ 11.  Defendants argue that
18 this contractual indemnity provision determines the extent of the duty to indemnify and
19 precludes any equitable indemnity claim.

20 It is well established that where "there is an express indemnity contract, the extent of
21 the duty to indemnify must be determined from the contract, and not by reliance on implied
22 indemnity principles."  INA Ins. Co. v. Valley Forge Ins. Co., 150 Ariz. 248, 252, 722 P.2d
23 975, 979 (Ct. App. 1986); see also Schweber Elecs. v. Nat'l Semiconductor Corp., 174 Ariz.
24 406, 410, 850 P.2d 119, 123 (Ct. App. 1992) ("When the parties expressly agree upon
25 indemnity provisions in their contract, the extent of the duty is defined by the contract itself
26 rather than common law principles."); MT Builders, LLC v. Fisher Roofing, Inc., 219 Ariz.
27 297, 302, 197 P.3d 758, 763 (Ct. App. 2008) ("When, as here, there is an express indemnity
28 agreement between parties, the extent of the duty to indemnify must be determined from that

1 agreement.").

2 Homeland contends that it is not relying on a contractual indemnity theory, but rather
3 on an equitable claim for indemnity. They argue that it would be "against public policy" to
4 limit its indemnity rights "to the very narrow provision in the Broker Agreement." Response
5 at 7. But Homeland has cited no case to contradict the overwhelming authority providing
6 that the existence of an express indemnity provision precludes an indemnity claim based on
7 equitable principles. Arizona courts have consistently concluded that a claim for equitable
8 indemnity is precluded where "the parties have already themselves determined how and
9 under what circumstances losses shall be allocated." INA Ins., 150 Ariz. at 252, 722 P.2d
10 at 979 (citation omitted). CRC's motion to dismiss Count 2 is granted.

11 However, there is no express indemnity agreement between Homeland and M&O.
12 Therefore Homeland's indemnity claim against M&O remains viable.

**IV**

14 Finally, defendants contend that Homeland's negligent misrepresentation claim is
15 precluded by the economic loss doctrine. This doctrine refers to a "common law rule limiting
16 a contracting party to contractual remedies for the recovery of economic losses
17 unaccompanied by physical injury to persons or other property." Flagstaff Affordable
18 Housing Ltd. v. Design Alliance, Inc., 223 Ariz. 320, 323, 223 P.3d 664, 667 (2010). The
19 Arizona Supreme Court has recently explained that its "adoption of the economic loss
20 doctrine in construction defect cases reflects [its] assessment of the relevant policy concerns
21 *in that context*." Id. at 329, 223 P.3d at 673 (emphasis added). The court cautioned that "it
22 does not suggest that the doctrine should be applied with a broad brush in other
23 circumstances." Id.

24 The key rationale underlying the economic loss rule presupposes that there has been
25 a fair and equitable negotiation of the allocation of risk between the parties. Negligent
26 misrepresentation, like fraud, undermines the presumption that the parties have negotiated
27 equitably. The extension of the doctrine to negligent misrepresentation would go beyond the
28 rule's purpose and essentially eliminate the tort of negligent misrepresentation. We doubt

that the Arizona Supreme Court would be willing to extend this doctrine this far. We conclude that the economic loss rule does not bar plaintiff's claims. Defendants' motion to dismiss Count 3 is denied.

### III

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** defendants' motion to dismiss or alternatively to stay the action (doc. 15). **IT IS ORDERED DENYING** defendants' motion to stay. **IT IS ORDERED GRANTING** defendants' motion to dismiss Count 2 as against CRC only. **IT IS ORDERED DENYING** defendants' motion to dismiss Count 3.

DATED this 4th day of December, 2012.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge